Case No. 15-3156

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **TROY ROTE; AMANDA ROTE** | : | |
| | : | |
| **Plaintiffs - Appellees** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZEL CUSTOM** | : | **On Appeal From The United** |
| **MANUFACTURING LLC, et al.** | : | **States District Court For The** |
| | : | **Southern District Of Ohio,** |
| **Defendants** | : | **Eastern Division, Case No.** |
| | : | **2:13-cv-01189** |
| **and** | : | |
| | : | |
| **FABRICA MILITAR FRAY LUIS** | : | |
| **BELTRAN, aka Direccion General** | : | |
| **de Fabricaciones Militares, aka** | : | |
| **Fabricaciones Militares** | : | |
| | : | |
| **Defendant - Appellant** | : | |

---

## BRIEF OF DEFENDANT - APPELLANT
## DIRECCIÓN GENERAL DE FABRICACIONES MILITARES

---

Lawrence D. Walker
walker@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone:  (614) 221-2838
Facsimile:   (614) 221-2007
*Attorney for Defendant-Appellant*
*Dirección General de Fabricaciones*
*Militares*

31744392.1

Case No. 15-3156

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **TROY ROTE; AMANDA ROTE** | : | |
| | : | |
| **Plaintiffs - Appellees** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ZEL CUSTOM** | : | **On Appeal From The United** |
| **MANUFACTURING LLC, et al.** | : | **States District Court For The** |
| | : | **Southern District Of Ohio,** |
| **Defendants** | : | **Eastern Division, Case No.** |
| | : | **2:13-cv-01189** |
| **and** | : | |
| | : | |
| **FABRICA MILITAR FRAY LUIS** | : | |
| **BELTRAN, aka Direccion General** | : | |
| **de Fabricaciones Militares, aka** | : | |
| **Fabricaciones Militares** | : | |
| | : | |
| **Defendant - Appellant** | : | |

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Defendant-Appellant Dirección General de

Fabricaciones Militares makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If
    Yes, list below the identity of the parent corporation or affiliate and the
    relationship between it and the named party:  No.

31744392.1

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If Yes, list the identity of such corporation and the name of the financial interest:  No.


April 21, 2015                    */s/ Lawrence D. Walker*
                                  Lawrence D. Walker

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

    Cases ................................................................................................ iii

    Statutes and Rules .......................................................................... iv

    Other Authorities ........................................................................... iv

STATEMENT OF REASONS WHY THE COURT SHOULD HEAR
ORAL ARGUMENT ............................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 2

STANDARD OF REVIEW .................................................................. 3

ISSUES PRESENTED FOR REVIEW ................................................ 3

STATEMENT OF THE CASE ............................................................. 4

SUMMARY OF ARGUMENT ............................................................ 6

ARGUMENT ....................................................................................... 8

    The Third Amended Complaint Should Have Been Dismissed
    Because It Did Not Contain A Short And Plain Statement Of
    The Grounds For The District Court's Jurisdiction Under The
    Foreign Sovereign Immunities Act ................................................. 8

    The Mere Design And Manufacture Of A Product, Without
    More, Is Not A "Commercial Activity" For The Purposes Of
    The Foreign Sovereign Immunities Act ........................................ 10

    The Place Of Injury Is Not The Determinant Of The "Direct
    Effect" Element Of The Commercial Activity Exception To
    The Foreign Sovereign Immunities Act ........................................ 13

CONCLUSION .................................................................................. 19

i

CERTIFICATE OF SERVICE ................................................................20

DESIGNATION OF RELEVANT DOCUMENTS ................................................21

ADDENDUM

    28 U.S.C. § 1603.........................................................................22

    28 U.S.C. § 1604.........................................................................23

    28 U.S.C. § 1605.........................................................................24

31744392.1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aldy v. Valmet Paper Machinery*, 74 F.3d 72 (5th Cir. 1996)............................12, 15

*Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012) ......................10, 13

*Dar El-Bina Engineering & Contracting Co., Ltd. v. Republic of Iraq*, 79 F. Supp.2d 374 (S.D.N.Y. 2000) ......................................................17

*DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 1140 (2012) ..........................................3, 9

*East Europe Domestic Intern. Sales Corp. v. Terra*, 467 F. Supp. 383 (S.D.N.Y. 1979), *aff'd*, 610 F.2d 806 (2d Cir. 1979)..........................................17

*Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445 (6th Cir. 1988) ..............................................................................................8

*Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002)......................3, 8, 9

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078 (9th Cir. 2001), *cert. denied*, 534 U.S. 1079 (2002) ................................................................................12, 16

*O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009), *cert. denied*, 558 U.S. 819 (2009) ..........................................................................3, 8, 9, 13

*Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014) .............................14

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002)....................................................................................17

*Princz v. Federal Republic of Germany*, 26 F.3d 1166 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1121 (1995)....................................................14, 16

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992)..............11, 12, 14, 16

*S. & Davis Intern. Inc. v. The Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000)..........................................................................................18

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ....................14, 16

*Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993), *cert. denied*, 508 U.S. 907 (1993) ..........................................................11, 12, 15

31744392.1

*Westfield v. Federal Republic of Germany*, 633 F.3d 409 (6th Cir. 2011) ..........................................................................................3, 9, 14, 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)........................18

## Statutes and Rules

28 U.S.C. § 1603 ............................................................................... 2, 5, 9

28 U.S.C. § 1604 ............................................................................ 2, 3, 6, 9

28 U.S.C. § 1605 ............................................................................. 5, 11, 13

28 U.S.C. § 1608 ....................................................................................5

Fed.R.Civ.P. 8(a)(1) ...................................................................... 7, 8, 10

## Other Authorities

H.R. Rep. 94-1487 (1976)...................................................................17

Wright & Miller, *Federal Practice and Procedure Civil* 3d § 1214 .......................10

iv

31744392.1

## STATEMENT OF REASONS WHY THE
## <u>COURT SHOULD HEAR ORAL ARGUMENT</u>

This appeal asks the Court to define the minimum pleading requirements for subjecting a foreign nation, or its agencies and instrumentalities, to the jurisdiction of the United States District Courts.  The Foreign Sovereign Immunities Act provides foreign states with immunity from suit, not just immunity from liability.

For that immunity to be meaningful, the document haling a foreign state into court should include a short and plain statement of the facts establishing that an exception to the immunity afforded by the Act applies.  Without such a pleading requirement, foreign nations would be subjected to prolonged litigation, not immunity from suit.

Because this case presents only questions of law under a *de novo* standard of review, it could have precedential significance.  Under the circumstances, the Court should have the benefit of oral argument so that the parties can address any questions or issues not answered by the briefs.

## JURISDICTIONAL STATEMENT

Defendant-Appellant Dirección General de Fabricaciones Militares (hereinafter "DGFM") is an instrumentality of the Republic of Argentina. As such, it is a "foreign state" for the purposes of the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1603(a). It removed this action to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1441(d), which provides for the removal to the district courts of "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a)."

Jurisdiction in the District Court also existed under 28 U.S.C. § 1330(a). Plaintiffs filed a Third Amended Complaint there invoking that statute, *see* PAGEID#: 434, Third Am. Compl., Doc. 56, at ¶ 16, which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) . . ."

This appeal is from the District Court's Opinion and Order filed on February 11, 2015 denying DGFM's motion to dismiss the Third Amended Complaint for lack of subject matter jurisdiction based upon the immunity from suit granted by 28 U.S.C. § 1604. *See* PAGEID#: 672-684, Opinion and Order, Doc. 81. The Notice of Appeal was filed on February 25, 2015. *See* PAGEID#: 685-687, Doc. 82.

31744392.1

An order denying a motion to dismiss grounded upon 28 U.S.C. § 1604 is a final collateral order and immediately appealable pursuant to 28 U.S.C. § 1291. *See, e.g., O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir. 2009), *cert. denied*, 558 U.S. 819 (2009); *Keller v. Central Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002). This Court, therefore, has jurisdiction over this appeal.

## STANDARD OF REVIEW

Questions of subject matter jurisdiction and immunity from suit, such as those raised in this appeal, are reviewed *de novo*. *See, e.g., Westfield v. Federal Republic of Germany*, 633 F.3d 409, 413 (6th Cir. 2011); *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513, 515 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 1140 (2012); *O'Bryan, supra*, 556 F.3d at 372.

## ISSUES PRESENTED FOR REVIEW

1.  Whether the Third Amended Complaint contained a short and plain statement of the grounds for the district court's jurisdiction under the Foreign Sovereign Immunities Act?

2.  Whether the mere design and manufacture of an allegedly defective product is a "commercial activity" for the purposes of the Foreign Sovereign Immunities Act?

3.      Whether, for the purposes of the Foreign Sovereign Immunities Act, a "foreign state" can cause a "direct effect" in the United States if it had no contacts, ties, or relations with the United States?

## STATEMENT OF THE CASE

This personal injury action was filed on September 9, 2013 in the Court of Common Pleas of Franklin County, Ohio [PAGEID#: 143, Compl., Doc. 2, at p. 1]. Plaintiffs alleged that Plaintiff Troy Rote was injured when a .50 caliber rifle he was handling exploded on September 10, 2011 [PAGEID#: 148, Compl., Doc. 2, at ¶¶ 17-24].

Plaintiffs sued the alleged owner, sellers, and manufacturers of the rifle and the individuals who owned the property where the mishap occurred [Compl., Doc. 2, at ¶¶ 2-6]. They also sued the alleged seller and manufacturer of the ammunition purportedly involved in the incident [PAGEID#: 146, Compl., Doc. 2, at ¶¶ 7-8].

Plaintiffs claimed that the ammunition which exploded in the rifle was a 12.7 x 99mm round manufactured by "Fabrica Militar Fray Luis Beltram a/k/a Fabricaciones Militares," which is a common name for DGFM. *See* PAGEID#: 149, Compl., Doc. 2, at ¶ 29. DGFM was established on October 9, 1941 by Law No. 12,709 of the Argentine National Congress and is an autarkic entity owned by

the Argentinian Government and under the supervision of its Ministry of Defense [PAGEID#: 6, Notice of Removal, Doc. 1, at ¶¶ 12 and 13].

DGFM did not learn of the filing of this action until October 25, 2013 [PAGEID#: 8, Notice of Removal, Doc. 1, at ¶ 21]. On November 25, 2013, it removed this litigation to the Eastern Division of the United States District Court for the Southern District of Ohio [PAGEID#: 1-10, Notice of Removal, Doc. 1].

DGFM was not served with Summons and Complaint until July 10, 2014. *See* PAGEID#: 636, Doc. 75-1 at p. 1. As an "instrumentality of a foreign state," *see* 28 U.S.C. § 1603(a), it had sixty days after service within which to respond. *See* 28 U.S.C. § 1608(d). On August 15, 2014, Plaintiffs filed a Third Amended Complaint. *See* PAGEID#: 428-453, Doc. 56.

In that pleading, they specifically alleged that jurisdiction existed in the District Court because DGFM "was an agency or instrumentality of the Argentine government, currently under the supervision of the Argentine Ministry of Defense" [PAGEID#: 434, Third Am. Compl., Doc. 56, at ¶ 16]. However, they did not allege that any of the exceptions to foreign sovereign immunity contained in 28 U.S.C. § 1605 applied. *See* PAGEID#: 428-453, Third Am. Compl., Doc. 56.

Under these circumstances, on August 26, 2014, DGFM moved that the Third Amended Complaint be dismissed as to it for lack of subject matter jurisdiction [PAGEID#: 502-508, Doc. 58]. DGFM argued that, as an

5

"instrumentality of a foreign state," it was entitled to immunity from suit under 28 U.S.C. § 1604 because Plaintiffs did not allege that any exception to that statute applied.  *See* PAGEID#: 502-508, Motion, Doc. 58.

In an Opinion and Order entered on February 11, 2015, the Honorable James L. Graham denied DGFM's motion.  *See* PAGEID#: 672-684, Doc. 81.  He held that Plaintiffs' allegations that DGFM had designed and manufactured the ammunition in issue and that they were injured in the United States were sufficient to bring the case within the third "commercial activity" exception of the Foreign Sovereign Immunities Act.  *See* PAGEID#: 679-684, Opinion and Order, Doc. 81, at pp. 8-13.

DGFM timely filed its Notice of Appeal on February 25, 2015.  *See* PAGEID#: 685-686, Doc. 82.  It respectfully requests that this Court reverse the Opinion and Order of the District Court and remand this case to that court with instructions to dismiss the Third Amended Complaint.  As the following demonstrates, the allegations of that pleading are insufficient to subject an instrumentality of the Argentine Government to the jurisdiction of the United States District Court.

## **SUMMARY OF ARGUMENT**

The Foreign Sovereign Immunities Act provides that instrumentalities of foreign states, like DGFM, are immune from suit in the United States unless one of

6

its stated exceptions applies.  When a party, like Plaintiffs here, alleges that a defendant is an instrumentality of a foreign state, it must also allege facts establishing that one of the exceptions to immunity in the Foreign Sovereign Immunities Act is available.

Plaintiffs made no allegation that any of the exceptions to immunity in the Foreign Sovereign Immunities Act applied.  Under Rule 8(a)(1) of the Federal Rules of Civil Procedure, they were required to set forth "a short and plain statement of the grounds for the court's jurisdiction."  They did not do so, and the Third Amended Complaint should have been dismissed as to DGFM.

The District Court held that Plaintiffs' allegations that DGFM designed and manufactured the ammunition in issue and that they were injured in the United States by that ammunition were adequate to bring the case within the third "commercial activity" exception of the Foreign Sovereign Immunities Act.  But an "instrumentality of a foreign state" must market and sell its products in order to be engaged in a "commercial activity," not merely design and manufacture them.  And a "foreign state's" design and manufacture of a product within its borders can have a "direct effect" in the United States only if it has contacts, ties, or relations with the United States.

Plaintiffs made no allegation that DGFM marketed or sold the ammunition it allegedly designed and manufactured.  Nor did they allege that DGFM had any

7

contacts, ties, or relations with the United States which would have caused its purported ammunition to have a direct effect here.  The Third Amended Complaint should have been dismissed as to DGFM.

## ARGUMENT

**The Third Amended Complaint Should Have Been Dismissed Because It Did Not Contain A Short And Plain Statement Of The Grounds For The District Court's Jurisdiction Under The Foreign Sovereign Immunities Act.**

It is settled that the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq* (hereinafter "the FSIA"), provides an immunity from suit, not just from liability.  *See, e.g., O'Bryan, supra*, 556 F.3d at 372; *Keller, supra*, 277 F.3d at 815; *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988).  Under the circumstances, a complaint which hales a "foreign state" into court should be subjected to strict scrutiny.

Rule 8(a)(1) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction."  Plaintiffs' jurisdictional allegations were set forth in Paragraphs 15 through 18 of the Third Amended Complaint.  *See* PAGEID#: 433-434, Doc. 56 at pp. 6-7.  Therein, they alleged that DGFM was "an instrumentality of a foreign state," PAGEID#: 434, Doc. 56 at ¶ 16, but made no averments that any exception to the immunity afforded by the FSIA applied.  *See* PAGEID#: 433-434, Third Am. Compl., Doc. 56, at ¶¶ 15-18.

8

That omission was fatal. An "instrumentality of a foreign state" is a "foreign state" for the purposes of the FSIA. *See* 28 U.S.C. § 1603(a). And, "a foreign state shall be immune from the jurisdiction of the courts of the United States . . . except as provided in sections 1605 to 1607 of this chapter." *See* 28 U.S.C. § 1604.

Having specifically alleged that DGFM was an "instrumentality of a foreign state" and, thereby, triggering the immunity provided by the FSIA, Plaintiffs assumed the burden of demonstrating that one of its exceptions applied. *See, e.g., Westfield, supra*, 633 F.3d at 413; *DRFP L.L.C., supra*, 622 F.3d at 515-516; *Keller, supra*, 277 F.3d at 815.

In *O'Bryan, supra*, 556 F.3d 361, this Court held that a plaintiff claiming an exception to the immunity granted by the FSIA must allege facts in its complaint establishing that exception:

> As this court has previously noted, "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." [citation omitted] "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." [citation omitted] And, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true. . . . If those allegations establish federal claims, jurisdiction exists." [citation omitted] However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." [citations omitted] (*Id.* at 375-376; emphasis added)

9

To the same effect, *see Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) ("In order for Carrier's complaint to allege jurisdiction adequately, it must contain non-conclusory facts which, if true, establish that the district court had jurisdiction over the dispute.").

There are no factual allegations in the "Jurisdiction And Venue" portion of the Third Amended Complaint establishing an exception to immunity under the FSIA.  *See* PAGEID#: 433-434, Third Am. Compl., Doc. 56, at ¶¶ 15-19.  No exception was even mentioned.  Plaintiffs did not comply with the requirement of Civil Rule 8(a)(1) to provide "a short and plain statement of the grounds for the court's jurisdiction."  The Third Amended Complaint was subject to dismissal for that reason alone.  As stated in Wright & Miller, *Federal Practice and Procedure Civil* 3d § 1214:

> A failure to include a short and plain statement of the grounds upon which subject matter jurisdiction depends as required by Federal Rule 8(a)(1) normally will result in a dismissal of the complaint on the defendant's motion under Rule 12(b)(1), unless the defect can be corrected by an amendment as of right or by leave of the district court.

**The Mere Design And Manufacture Of A Product, Without More, Is Not A "Commercial Activity" For The Purposes Of The Foreign Sovereign Immunities Act.**

The District Court held that the Third Amended Complaint contained allegations which were sufficient to bring the case within the third clause of the "commercial activity" exception of the FSIA [PAGEID#: 678-684, Opinion and

10

Order, Doc. 81, at pp. 7-13].  That clause is contained in 28 U.S.C. § 1605(a) and provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case --
>
> *     *     *     *     *
>
> (2) in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

In *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992), the Supreme Court held that a plaintiff must establish the following under the foregoing statute:

> [W]hether [the] lawsuit is (1) "based . . . upon an act outside the territory of the United States"; (2) that was taken "in connection with a commercial activity" of [the foreign state] outside of this country; and (3) that "cause[d] a direct effect in the United States."  (*Id.* at p. 611)

Relying upon cases where foreign states had purchased or sold goods or services in the marketplace, the District Court mistakenly held that DGFM's alleged design and manufacture of the ammunition at issue were enough to invoke the third clause of 28 U.S.C. § 1605(a)(2).  *See* PAGEID#: 679-680, Opinion and Order, Doc. 81, at pp. 8-9.  But "commercial activity" for the purposes of the FSIA in a products liability case is <u>not</u> the design or manufacture of a product, <u>but</u> its marketing and sale.  In *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993), *cert. denied*, 508 U.S. 907 (1993), a case upon which the District Court

11

relied, *see* PAGEID#: 677-678, Opinion and Order [Doc. 81] at pp. 6-7, 12, the

Eleventh Circuit held:

> RNUR's design and manufacture of the Renault LeCar unquestionably were acts connected to a commercial activity of RNUR outside the United States.  RNUR designed and built LeCars in order to sell them throughout the world.  <u>The sale of merchandise is a quintessential commercial activity</u>.  (*Id.* at 1544; emphasis added)

*See also Aldy v. Valmet Paper Machinery*, 74 F.3d 72 (5th Cir. 1996)

(instrumentality of Finnish government in the business of selling paper mills);

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078 (9th Cir. 2001), *cert. denied*, 534 U.S. 1079

(2002) (instrumentality of Italian government in the business of selling

helicopters).

The Third Amended Complaint contains no allegation establishing that

DGFM marketed, sold, or was in the business of marketing or selling, ammunition.

The only facts Plaintiffs alleged were that DGFM manufactures ammunition, that it

is an "instrumentality of the Argentine government," and that it is "under the

supervision of the Argentine Ministry of Defense" [PAGEID#: 432, 434, Third

Am. Compl., Doc. 56, at ¶¶ 9 and 16].  <u>There is not a single fact alleged in the</u>

<u>Third Amended Complaint which supports the conclusion that DGFM's design and</u>

<u>manufacture of ammunition were undertaken "'in connection with a commercial</u>

<u>activity.'"</u>  *See Weltover, supra*, 504 U.S. at 611.  That pleading does not even

identify the actions of DGFM which allegedly constituted "commercial activity."

12

The District Court also held that Plaintiffs' bald assertion that the Defendants collectively "introduced their goods into the stream of commerce" sufficed to confer jurisdiction under the FSIA.  *See* PAGEID#: 675-676, Opinion and Order, Doc. 81, at pp. 5-6, note 1.  But those are the very types of "conclusory allegations or legal conclusions masquerading as factual conclusions" which "will not suffice to prevent a motion to dismiss."  *O'Bryan, supra*, 556 F.3d at 376.  *See also Carrier Corp., supra*, 673 F.3d at 440 (jurisdictional allegations "must contain non-conclusory facts which, if true, establish that the district court had jurisdiction over the dispute.").

To base subject matter jurisdiction upon the third clause of the "commercial activity" exception in the FSIA, 28 U.S.C. § 1605(a)(2), it was incumbent upon Plaintiffs to allege facts which established that DGFM had sold, or otherwise introduced, ammunition into the stream of commerce outside of the United States. Plaintiffs did not do so because they had no facts supporting either conclusion. The Third Amended Complaint should have been dismissed.

**The Place Of Injury Is Not The Determinant Of The "Direct Effect" Element Of The Commercial Activity Exception To The Foreign Sovereign Immunities Act.**

The District Court held that the "direct effect" element of the third clause of the "commercial activity" exception of the FSIA was fulfilled by the allegation that Plaintiffs sustained their injuries in Ohio [PAGEID#: 683-684, Opinion and Order,

31744392.1

Doc. 81, at pp. 12-13]. In *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 490 (1983), the Supreme Court held that the FSIA requires "some form of substantial contact with the United States." And in *Westfield, supra*, 633 F.3d at 414, this Court stated that it should be "wary of applying [the direct effect] requirement too loosely."

"An effect is direct if it follows as an immediate consequence" of the foreign state's actions. *Weltover, supra*, 504 U.S. at 618. Or, as stated by Justice Ginsburg shortly before her elevation to the Supreme Court, a "direct effect . . . is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1121 (1995).

With these principles in mind, the courts have generally held that there must be contact by a foreign state with the territory of the United States for there to be a "direct effect" here. For instance, in *Odhiambo v. Republic of Kenya*, 764 F.3d 31 (D.C. Cir. 2014), the court held:

> To summarize, this Court's cases draw a very clear line: For purposes of clause three of the FSIA commercial activity exception, breaching a contract that establishes or necessarily contemplates the United States as a place of performance causes a direct effect in the United States, while breaching a contract that does not establish or necessarily contemplate the United States as a place of performance does not cause a direct effect in the United States. (*Id.* at 40)

Likewise, in *Westfield, supra*, 633 F.3d 409, this Court stated:

14

Courts have struggled to announce objective standards and clear rules for determining what does and does not qualify as a direct effect in the United States. Without objective standards to guide us, much of our analysis is drawn from comparison to other decisions addressing the scope of the direct effect requirement, many of which involve bonds issued by foreign governments. For example, *Weltover* involved bonds issued by Argentina that allowed the creditor to elect to receive payment in either the London, Frankfurt, Zurich or New York markets. . . . "Because New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id.* at 619, 112 S.Ct. 2160.

Similarly, when considering claims arising out of a scam perpetrated by an individual purporting to be an official in the Nigerian government, we concluded that the direct effect requirement was satisfied when the foreign government failed to comply with its alleged obligation to make payment in the United States. *Keller*, 277 F.3d at 814, 818. The plaintiff in *Keller* alleged that the Central Bank of Nigeria, an entity controlled by Nigeria and entitled to sovereign immunity, had agreed to pay funds to an account at a bank in Cleveland, Ohio but failed to do so. *Id.* at 818. Because of the preexisting duty to pay funds in the United States, we concluded that, as in *Weltover*, the failure to do so caused a direct effect in this country. *Id.* [citations omitted] <u>However, here, the [Plaintiffs] have not alleged that Germany ever promised to deliver Westfeld's art collection to the United States. Because Germany had not obligated itself to do anything in the United States, we cannot say that its actions caused a direct effect in the United States based on the *Weltover* line of cases.</u> (*Id.* at 414-415; emphasis added)

To the same effect, *see Vermeulen, supra*, 985 F.2d at 1537-1541 (where foreign state was directly involved in the distribution and sale of automobiles in the United States, personal injury within the United States caused by such automobiles was "the direct effect" of foreign state's design and manufacture of automobile); *Aldy*,

*supra*, 74 F.3d at 74 (where foreign state supervised construction of paper mill within the United States, personal injury caused by such paper mill was "the direct effect" of its design and manufacture).  *But see Lyon, supra*, 252 F.3d at 1081 (where helicopter was designed, manufactured, and sold by foreign state outside of the United States, injury within the United States caused thereby was a "direct effect" for the purposes of the "commercial activity" exception).

Hinging the "direct effect" requirement upon the place of injury rather than the foreign state's contact with the United States -- as the District Court did here and the Ninth Circuit did in *Lyon* -- is contrary to the holdings of the Supreme Court.  For an exception to the FSIA to apply "some form of substantial contact with the United States" must have occurred, *Verlinden*, *supra*, 461 U.S. at 490, <u>and</u> the injury at issue must be the "immediate consequence" of the foreign state's actions, *Weltover, supra*, 504 U.S. at 618.

If a foreign state was not a participant or involved in the sale or distribution of its products within the United States, then it could not have caused a "direct effect" here.  <u>Necessarily, someone or something intervened between the foreign state and the United States, and that intervention prevented there being a "direct effect" attributable to the foreign state here</u>.  *See Princz, supra*, 26 F.3d at 1172.

The legislative history of the FSIA establishes that a "foreign state" must have "minimum contacts" with the United States for an exception to the immunity

16

provided by that statute to apply.  In pertinent part, the Report of the Judiciary

Committee of the House of Representatives on the Foreign Sovereign Immunities

Act of 1976 states:

> [28 U.S.C. §] 1330(b) provides, in effect, a Federal long-arm statute over foreign states (including political subdivisions, agencies, and instrumentalities of foreign states).  It is patterned after the long-arm statute Congress enacted for the District of Columbia.  Public Law 91-358, sec. 132(a), title I, 84 Stat. 549.  <u>The requirements of minimum jurisdictional contacts and adequate notice are embodied in the provision</u>.  Cf. International Shoe Co. v. Washington, 326 U.S. 310 (1945), and McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957).  For personal jurisdiction to exist under section 1330(b), the claim must first of all be one over which the district courts have original jurisdiction under section 1330(a), meaning a claim for which the foreign state is not entitled to immunity.  <u>Significantly, each of the immunity provisions in the bill, sections 1605-1607, requires some connection between the lawsuit and the United States</u>, or an express or implied waiver by the foreign state of its immunity from jurisdiction.  <u>These immunity provisions, therefore, prescribe the necessary contacts which must exist before our courts can exercise personal jurisdiction</u>.  [H.R. Rep. 94-1487 at 13 (1976); emphasis added][1]

In light of the foregoing, the FSIA requires adherence to Fifth Amendment

due process as a condition to asserting jurisdiction over a "foreign state."  *See, e.g.,*

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 90 (D.C. Cir.

2002); *Dar El-Bina Engineering & Contracting Co., Ltd. v. Republic of Iraq*, 79 F.

Supp.2d 374, 388 (S.D.N.Y. 2000); *East Europe Domestic Intern. Sales Corp. v.*

*Terra*, 467 F. Supp. 383, 387 (S.D.N.Y. 1979), *aff'd*, 610 F.2d 806 (2d Cir. 1979).

---

[1] The FSIA is codified at 28 U.S.C. §§ 1330, 1332(a)(4), 1441(d), and 1602-1611.

In *S. & Davis Intern. Inc. v. The Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000), the court held:

> In general, the majority of cases brought under the FSIA involve commercial activity, <u>which requires an evaluation of the activity's effects in the United States</u>, *see* 28 U.S.C. § 1605(a)(2), <u>similar to a "minimum contacts" analysis. The "direct effect" language of 28 U.S.C. § 1605(a)(2) closely resembles the "minimum contacts" language of constitutional due process and these two analyses have overlapped</u>. (*Id.* at 1304; emphasis added)

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the plaintiffs sued in Oklahoma for injuries sustained in an automobile accident there. They claimed that the accident was caused by a defective vehicle the defendants had sold in New York. Finding the place of injury to be irrelevant, the Supreme Court held that due process forbade the exercise of jurisdiction over the defendants because they had no "contacts, ties, or relations" with Oklahoma. *Id.* at 299.

This case is no different. Plaintiffs alleged no facts showing that DGFM had any "contacts, ties, or relations" with the United States. <u>Its purported design and manufacture of ammunition in Argentina did not have a "direct effect" in the United States</u>. Yet, that is all Plaintiffs alleged and all the District Court found to be determinative. The Third Amended Complaint should have been dismissed.

18

## CONCLUSION

The FSIA provides an immunity from suit.  There are no allegations in the Third Amended Complaint establishing an exception to that immunity.  The Opinion and Order of the District Court should be reversed and the case remanded with instructions to dismiss the Third Amended Complaint as to DGFM.

Respectfully submitted,

*/s/ Lawrence D. Walker*
Lawrence D. Walker
walker@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, Ohio 43215
Telephone:  (614) 221-2838
Facsimile:   (614) 221-2007
*Attorney for Defendant-Appellant*
*Dirección General de Fabricaciones*
*Militares*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was served through the Court's CM/ECF system this 21st day of April 2015 on the following:

Daniel N. Abraham
Colley Shroyer & Abraham Co., LPA
536 South High Street
Columbus, OH 43215
dabraham@csalawfirm.com

*Attorney for Plaintiffs-Appellees*
*Troy Rote and Amanda Rote*

*/s/ Lawrence D. Walker*
Lawrence D. Walker

20

31744392.1

## <u>DESIGNATION OF RELEVANT DOCUMENTS</u>

Record Entry No. 1, Notice of Removal, PAGEID#: 1-10

Record Entry No. 2, Complaint, PAGEID#: 143-162

Record Entry No. 56, Third Amended Complaint, PAGEID#: 428-453

Record Entry No. 58, Motion to Dismiss, PAGEID#: 502-508

Record Entry No. 81, Opinion and Order, PAGEID#: 672-684

Record Entry No. 82, Notice of Appeal, PAGEID#: 685-687

31744392.1

**28 U.S.C. § 1603.  Definitions**

For purposes of this chapter—

(a)    A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b)    An "agency or instrumentality of a foreign state" means any entity—

(1)    which is a separate legal person, corporate or otherwise, and

(2)    which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3)    which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

(c)    The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

(d)    A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

(e)    A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

31744392.1

## 28 U.S.C. § 1604.  Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

## 28 U.S.C. § 1605.  General exceptions to the jurisdictional immunity of a foreign state

(a)    A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1)    in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

(2)    in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

(3)    in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

(4)    in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

(5)    not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and

24

caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—

> (A)    any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

> (B)    any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

(6)    in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

(b)    A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That—

(1)    notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2)    notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c)    Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the

26

plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d)   A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

(g)   Limitation on discovery.—

(1)   In general.—(A) Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

(B)   A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

(2)   Sunset.—(A) Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10

27

years after the date on which the incident that gave rise to the cause of action occurred.

(B)    After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would—

(i)    create a serious threat of death or serious bodily injury to any person;

(ii)    adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

(iii)    obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

(3)    Evaluation of evidence.—The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

(4)    Bar on motions to dismiss.—A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

(5)    Construction.—Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

31744392.1